IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONNY DERRICK and ANGIE DERRICK,

    Plaintiffs,

v.                                                            No. 17-cv-1245 RB/SMV

STANDARD NUTRITION COMPANY,
JOHN DOES 1–5, and XYZ CORPORATE
OR BUSINESS ENTITIES 1–5,

    Defendants,

and

STANDARD NUTRITION COMPANY,

    Counterclaimant,

v.

RONNY DERRICK and ANGIE DERRICK,

    Counter-defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR EXTENSION [Doc. 55] AND PLAINTIFFS' MOTION TO AMEND THE SCHEDULING ORDER [Doc. 65]

THIS MATTER is before the Court on two motions. The first is Plaintiffs' Motion for Extension Re: Expert Reports [Doc. 55], filed on August 31, 2018. Defendant Standard Nutrition Company responded on September 14, 2018. [Doc. 56]. Plaintiffs replied on September 21, 2018. [Doc. 57]. Oral argument was held on October 19, 2018. [Doc. 64] (Clerk's Minutes for Oral Argument). The second motion is Plaintiffs' Motion to Amend the Scheduling Order, filed on October 22, 2018. [Doc. 65]. Defendant has not filed a response, and none is needed. The Court

has considered the briefing, the oral argument, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises, the Court will deny both motions.

## I. BACKGROUND

Plaintiffs breed rodeo and ranch horses in New Mexico. [Doc. 1-1] at 1, 3. Defendant Standard Nutrition (hereinafter "Defendant") delivered feed for the horses on December 8, 2016. *Id.* at 5. Shortly thereafter, some of Plaintiffs' horses fell ill. *Id.* at 5–6. By December 10, 2016, two horses had died. *Id.* Plaintiffs retained counsel a few days later. *Id.* at 19. Plaintiffs filed this action against Defendant nearly a year later, on November 2, 2017. *Id.* at 7–14. Plaintiffs allege that the feed was contaminated with monensin, an antibiotic, and that the monensin poisoned Plaintiffs' horses. *Id.* at 3–4, 6.

The Answer was filed on December 27, 2017. [Doc. 5]. Defendant denied that its feed caused the horses' injuries. [Doc. 5] at 2. Defendant denied causation again in the Joint Status Report filed on March 9, 2018. [Doc. 17] at 2.

The Court held a status conference on January 29, 2018, before entering the Initial Scheduling Order. The Court specifically told the parties that the purpose for the status conference was to avoid opposed motions to extend the discovery deadlines late in the discovery process. [Doc. 8] at 2 (Clerk's Minutes for Telephonic Status Conference). The Court explained that the party moving to amend a scheduling order must show good cause, and that the most important factor in determining good cause is the moving party's diligence. *Id.* In other words, was the moving party unable to complete discovery within the time allowed, despite diligent efforts to do so?

The parties filed their Joint Status Report and Provisional Discovery Plan [Doc. 17] on March 9, 2018. Plaintiffs listed the following potential trial experts:

> 1. Appraiser Jeff Ellis, see above
> 2. A veterinary expert and/or treating veterinarian Ronald Box, DVM, see above
> 3. The person or persons who read/interpreted the testing results on the subject feed and/or 30(b)(6) designee(s) of the testing center(s)
> 4. An expert with respect to the effects of monensin on livestock and the standard of care with respect [to] monensin in horse feed
> 5. An expert with respect to the standards of care applicable to the manufacture, storage shipping and delivery of the subject feed, including but not limited to "carryover", maintenance and cleaning of equipment and facilities, ingredients used in the mill where horse feed is made[.]

[Doc. 17] at 5.

The Court held a Rule 16 Scheduling Conference on April 2, 2018. At the beginning of that conference, Plaintiffs' counsel advised the Court that he had not yet completed his initial disclosures. [Doc. 19] (Clerk's Minutes for First Telephonic Rule 16 Scheduling Conference). The Court terminated the conference and rescheduled a second Rule 16 Scheduling Conference for May 1, 2018. At that conference the Court set Plaintiffs' expert disclosure deadline for August 29, 2018. [Doc. 25] at 2. The Court asked Plaintiffs' counsel if he had any objection to that deadline, and counsel had none. Recording of Rule 16 Scheduling Conference, May 1, 2018, Liberty—Picacho Courtroom, at 8:47. The Court spoke at length regarding the parties' obligations regarding disclosure of expert witnesses. The Court emphasized that it is each party's obligation to have its own experts ready to be deposed on the date they are identified. [Doc. 24] at 3 (Clerk's Minutes for Second Telephonic Rule 16 Scheduling Conference).

Plaintiffs filed the instant Motion for Extension of the expert disclosure deadline on August 31, 2018, two days after the expert disclosure deadline. [Doc. 55]. The Motion seeks an extension until October 1, 2018, for Plaintiffs to disclose their experts and produce those experts'

3

reports. *Id.* at 1. However, Plaintiffs did not disclose any experts by October 1, 2018. Instead, Plaintiffs filed a Status Report and "Update to Motion for Extension Re Expert Reports."[1] [Doc. 60]. In that Status Report and Update, Plaintiffs requested a "brief," but unspecified, extension of the expert disclosure deadline. *Id.* at 4. The Court denied the request on October 2, 2018, without prejudice for failure to comply with D.N.M.LR-Civ. 7.1(a). [Doc. 62].

On October 19, 2018, the Court heard oral argument on the Motion for Extension. [Doc. 64] (Clerk's Minutes of Telephonic Oral Argument on Plaintiffs' Motion for Extension). At that hearing, Plaintiffs' counsel advised the Court that, not only was he unprepared to identify any experts on liability and causation, but that he was unsure whether he ever would have any such experts. In other words, nearly two years after Plaintiffs retained an attorney to pursue a claim against Defendant, and nearly two years after Plaintiffs were put on notice that Defendant denied liability and causation, Plaintiffs are unsure whether they can find an expert on either issue.

On October 22, 2018, Plaintiffs filed their Motion to Amend the Scheduling Order, in which Plaintiffs again requested an indefinite, "brief but sufficient [period of] time to complete" expert disclosures. [Doc. 65] at 7.

## II. ANALYSIS

Plaintiffs request the extension of time to disclose experts for two reasons. First, they claim they need additional time to perform tests on their horses. They claim that a veterinarian inadvertently misled them to believe that a blood test would reveal the damage done to their horses' hearts. [Doc. 55] at 2–3. The test, however, proved "inconclusive," which delayed them from

---

[1] Though Plaintiffs title this Motion as a "Status Report, Request for Status Conference, and Update to Motion for Extension Re Expert Reports," it is most properly characterized as a second Motion to Extend. *See* [Doc. 60].

identifying their expert(s) on time. [Doc. 65] at 4. Second, Plaintiffs claim that they have been unable to complete two depositions needed by their potential experts: George Madrazo (Defendant's feed mill director) and Kevin Floyd (a former employee of Defendant). [Doc. 55] at 2. The Madrazo deposition was cut short when the court reporter fell ill. The reporter did not get the transcript to Plaintiffs' counsel until October 1, 2018. [Doc. 60] at 2. Plaintiffs claim to have had difficulties scheduling Mr. Floyd's deposition. It is currently scheduled to be taken in early November. [Doc. 65] at 6.

Defendant argues that Plaintiffs have failed to establish good cause to extend the expert disclosure deadline because Plaintiffs have had more than a year to find an expert and have (apparently) been unable to find one to support their claims. [Doc. 56] at 2–3.[2] Defendant moves the Court for an award of attorneys' fees for responding to Plaintiffs' Motion for Extension. *Id.* at 3.

Rule 26(a)(2)(D) provides that a "party must make [expert] disclosures at the times and in the sequence that the court" mandates in its scheduling order. Fed. R. Civ. P. 26(a)(2)(D). A court may modify a scheduling order, however, for good cause. Fed. R. Civ. P. 16(b)(4). The Tenth Circuit has identified several factors to use in determining if good cause exists, including:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

---

[2] Defendant also argues that Plaintiffs' Motion should be denied as untimely because Plaintiffs filed it two days after the deadline to disclose experts. [Doc. 56] at 2–3. Because the Court finds that good cause does not exist to extend the deadline, it will not decide whether Plaintiffs' Motion should be denied as untimely.

5

*Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). The movant's diligence is the touchstone of the above factors. *E.g.*, *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Balancing the *Smith* factors, the Court finds that Plaintiffs have failed to establish good cause to amend the Scheduling Order.

With respect to the first *Smith* factor, trial is set for July 29, 2019. [Doc. 28]. Because trial is not imminent, the first factor weighs in Plaintiffs' favor. *Cf. Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 605 (10th Cir. 1997) (finding that trial was not imminent when the plaintiff filed a request for a new scheduling order 80 days before trial's start date).

The second factor—whether the request for an extension is opposed—weighs against Plaintiffs; Defendant opposes the Motion. [Doc. 56].

The third factor, prejudice to the non-movant, also weighs against a finding of good cause. Defendant has already timely disclosed its experts. *See* [Doc. 59]. Granting Plaintiffs an indefinite extension to identify their experts would allow them to search for experts with the knowledge of Defendant's experts' testimony in mind. That is the exact opposite of how it is supposed to work. Plaintiffs have the burden of proof. They are required to disclose their experts first, so that the Defendant can make informed decisions on (1) whether it is necessary to retain any experts at all, and if so, (2) what issues those experts need to address. Having to identify their own experts without knowing what kind of experts Plaintiffs plan to call, and what opinions those experts will give, is obviously prejudicial to the Defendant.

The fourth factor—Plaintiffs' diligence—also weighs against granting the Motion. Plaintiffs retained counsel to pursue a claim in December of 2016. They have known since December of 2017 that Defendants dispute liability and causation. *See* [Doc. 5]. Plaintiff Ronny

Derrick was deposed on July 26, 2018. [Doc. 56-1]. As of that date—more than 18 months after retaining an attorney to pursue a claim and more than 6 months after being placed on notice that Defendant denies liability and causation—he had done little more than interview potential experts by phone. *Id.* at 2. He had not taken any of the horses to any veterinarian. *Id.* Several horses were eventually taken to Colorado State University for echocardiogram testing, but as of October 10, 2018, Plaintiffs were still unsure whether the results of that testing would support their claims:

> Also, additional time may be needed for consultation regarding the overall liability picture vis-à-vis the adulterated feed. The testing at Colorado State reveals anomalies in each of the eight horses examined but is inconclusive with respect to whether the feed at issue caused those conditions. . . . [The veterinary cardiologist] advised that additional testing . . . *may* add more conclusive data.

[Doc. 65] at 3 (emphasis added). In short, Plaintiffs hope to obtain an unspecified extension of time to do additional testing on the horses, which may or may not result in their being able to identify experts on liability and causation. If testing was necessary, that should have been done at the beginning of the case, not the month before the expert disclosure deadline.

Plaintiffs argue that their hypothetical experts would need the Madrazo and Floyd depositions to prepare expert reports. Recording of Oral Argument, October 19, 2018, Liberty—Organ Courtroom, at 44:18. At oral argument, however, Plaintiffs' counsel could not say what information he hoped to get from the depositions or why any potential expert would need the testimony to formulate their opinions. *Id.* Nor is that obvious from the pleadings. Plaintiffs need to prove that there was an improper level of monensin in the feed and that ingesting the monensin injured the horses. If expert testimony is necessary on either of those issues, it is unclear why an expert would need the deposition testimony of Defendant's employees to formulate an opinion.

7

And if such testimony is necessary, Plaintiffs' counsel should have known that and should have scheduled the depositions well in advance of the expert disclosure deadline.

Plaintiffs have known since December of 2017 that Defendant disputes liability and causation and, therefore, that they would likely need experts on those issues. Yet it appears that Plaintiffs are no closer to finding an expert now than they were when their horses died in 2016. Plaintiffs have not been diligent. The fourth factor therefore weighs against granting the Motion.

The fifth factor—foreseeability of the need for additional discovery in light of the time allowed for discovery—also weighs against Plaintiffs. Plaintiffs have known (or should have known) that they would need an expert on liability and causation since Defendant contested those issues in its Answer (filed on December 27, 2017) and in the Joint Status Report (filed on March 9, 2018). There was no last-minute disclosure of new evidence that Plaintiffs could not earlier have uncovered. *See Geremia v. First Nat'l Bank of Bos.*, 653 F.2d 1, 6 (1st Cr. 1981). Plaintiffs have known they would need to call expert witnesses from the beginning of the case. *See* [Doc. 17] at 4 (stating that, as of the Joint Status Report filed on March 9, 2018, potential trial witnesses for Plaintiffs include "experts to be determined with respect to issues of standard of care, causation and damages"). They have simply waited too long to find them.[3]

Finally, with respect to the sixth *Smith* factor, the Court is far from convinced that an extension of the expert disclosure deadline would result in Plaintiffs obtaining relevant evidence. Indeed, Plaintiffs argue that they need to complete the depositions *in order to determine whether*

---

[3] Plaintiffs argue that they were "misled" by a local veterinarian who apparently told them that a certain blood test would be able to reveal whether the horses' hearts had been damaged by the allegedly adulterated feed. [Doc. 55] at 2; [Doc. 65] at 3. They claim they subsequently learned that the blood test was "inapplicable" in late July, and that the horses would need to undergo echocardiograms to determine whether they had heart damage. Recording of Oral Argument at 28:00. Assuming that to be the case, that is when they should have filed their Motion for Extension, not after the deadline had passed.

*they need an expert at all*. Recording of Oral Argument at 44:18. Plaintiffs cannot even represent that they will disclose an expert if granted an extension. *See* [Doc. 65] at 3 (stating that additional testing and consultation "may" add more conclusive data). Therefore, the sixth factor weighs against finding good cause because the likelihood that the extension would produce relevant evidence is unclear.

Balancing the *Smith* factors, the Court finds that Plaintiffs have failed to establish good cause to amend the Scheduling Order.

Defendant requests an award of attorneys' fees for responding to the Motion for Extension. However, Defendant cites no authority under which the Court might award fees, nor any argument as to why an award of fees would be appropriate. The Court will deny Defendant's request for attorneys' fees. *See Bison Advisors LLC v. Kessler*, Civil No. 14-3121 (DSD/SER), 2016 WL 3525900, at *7 n.7 (D. Minn. Jan. 21, 2016) ("Defendants have devoted no substantive portion of their briefing to why an award of expenses is appropriate here, and the Court declines to sanction Plaintiffs by ordering the payment of Defendants' reasonable expenses under the circumstances presented here.").

### III. CONCLUSION

For the above reasons, Plaintiffs' Motion for Extension [Doc. 55] and Plaintiffs' Motion to Amend the Scheduling Order [Doc. 65] are **DENIED**. Defendant's request for attorneys' fees, [Doc. 56], is also **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**