IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RONNY DERRICK and ANGIE DERRICK,

    Plaintiffs,

v.                                                                   No. 17-cv-1245 RB/SMV

STANDARD NUTRITION COMPANY,
JOHN DOES 1–5, and XYZ CORPORATE
OR BUSINESS ENTITIES 1–5,

    Defendants,

and

STANDARD NUTRITION COMPANY,

    Counterclaimant,

v.

RONNY DERRICK and ANGIE DERRICK,

    Counter-defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS

THIS MATTER is before the Court on Plaintiffs' Motion for Sanctions [Doc. 68], filed on November 19, 2018. Defendant Standard Nutrition Company responded on December 3, 2018. [Doc. 72]. Plaintiffs never replied. Plaintiffs filed their First Supplemental Brief regarding the Motion for Sanctions on February 13, 2019. [Doc. 89]. Defendant responded to the First Supplemental Brief on December 21, 2019. [Doc. 90]. Plaintiffs then filed their Second Supplemental Brief, and an Errata regarding their First Supplemental Brief, on March 13, 2019. [Docs. 92, 93]. Defendant responded to the Second Supplemental Brief on March 14, 2019.

[Doc. 94]. The Court held oral argument on the Motion on March 18, 2019. [Doc. 95] (Clerk's Minutes). The Court has considered the briefing, oral argument, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises, the Court will **DENY** Plaintiffs' Motion.

## I. BACKGROUND

Plaintiffs breed horses at their New Mexico ranch. [Doc. 1-1] at 2. They purchased feed for their horses from Defendant Standard Nutrition on or about December 8, 2016. *Id.* at 5. Plaintiffs allege that some of their horses became ill and died after eating the feed. *Id.* Plaintiffs claim that the feed contained monensin, a substance toxic to horses. *Id.* Plaintiffs assert various claims against Defendant, including claims for products liability, breach of contract, cruelty to animals, unfair trade practices, misrepresentation, and fraud. *Id.* at 7–14. Defendant has filed a counterclaim alleging breach of contract (failure to pay for the feed) and malicious abuse of process. [Doc. 5] at 3–4.

Plaintiffs served Requests for Production ("RFPs") seeking, inter alia, notes and records related to Plaintiffs' feed; records of the manufacture, storage, and movement of the feed; and records identifying five other feeds that may have contaminated Plaintiffs' feed. [Doc. 44] at 4–6. Dissatisfied with Defendant's responses to the RFPs, Plaintiffs filed a Motion to Compel. [Doc. 44]. At the oral argument on the Motion to Compel, counsel stated that Defendant had agreed to supplement some of its discovery responses.[1] [Doc. 52] at 1. The Court therefore granted the Motion "insofar as Defendant has agreed to supplement its production of documents" and denied the remainder of the Motion as moot. [Doc. 52] (Clerk's Minutes); [Doc. 53]. The

---

[1] Counsel did not state in any detail their agreement to supplement; they simply stated that they had such an agreement.

Court ordered Defendant to supplement its responses by August 24, 2018, and ordered Plaintiffs to file objections, if any, to Defendant's supplemental responses no later than September 7, 2018. [Doc. 53]. Defendant supplemented its responses on August 24, 2018. [Doc. 72-4]. Plaintiffs did not object.

Two months later, on October 25, 2018, Plaintiffs deposed George Madrazo, Defendant's current Operations Manager and formerly the Co-Operations Manager with Kevin Floyd. [Doc. 68-2] at 1. According to Plaintiffs, Madrazo testified that Defendant has—or should have—various records, test results, feed samples, fines,[2] and other evidence that it had not produced. [Doc. 68] at 4–5. At the deposition, Plaintiffs' counsel orally requested production of Defendant's monensin inventory and test results from Elanco.[3] [Doc. 68-2] at 15, 20. Plaintiffs' counsel emailed defense counsel on October 30, 2018, asking Defendant to "look into" the documents Madrazo testified to. [Doc. 72-3] at 1–2. These documents include: a photo of a conveyor, notes and records from Floyd, test results from Elanco, a fax concerning Defendant's investigation into Plaintiffs' horses' deaths, Defendant's monensin inventory, and other samples and test results of Plaintiffs' feed. *Id.*

In the October 30, 2018 email, Plaintiffs' counsel also asked Defendant's counsel to look into the fines that resulted from the manufacture of Plaintiffs' feed. According to Madrazo, those fines should have been retained at the mill until the next production cycle. *Id.* at 2; *see* [Doc. 68-2] at 5.

---

[2] "Fines are remnants of the feed pellets, and are created during the manufacturing process, as well as the delivery process as the pellets move and fines break off from the pellets." [Doc. 90] at 4.
[3] Elanco is a company that manufactures Rumensin, the brand name for monensin.

3

Plaintiffs filed the instant Motion for Sanctions on November 19, 2018. [Doc. 68]. Defense counsel subsequently replied to Plaintiffs' counsel's email on November 28, 2018, stating that, though he would provide photos of the conveyor, all other discovery requests involved evidence (1) that Defendant had already disclosed, (2) that Defendant had destroyed inadvertently or in the normal course of business, or (3) that did not exist at the time of the incident. [Doc. 72-3] at 1. Defendant responded to the Motion on December 3, 2018. [Doc. 72].

The Court held a status conference on February 1, 2019. [Doc. 86] (Clerk's Minutes). The Court ordered Plaintiffs to file supplemental briefing addressing the deposition testimony of Floyd and Plaintiffs' expert, Dr. Ronald Box, as well as any other additional discovery completed after Defendant responded to the Motion for Sanctions on December 3, 2018. *Id.*; Recording of Status Conference at 4:15–6:00 (February 1, 2019) (Liberty—Picacho Courtroom). The Court ordered Plaintiffs to file their supplemental brief no later than February 13, 2019, and Defendant to file its response no later than February 21, 2019. [Doc. 88].

Plaintiffs filed their First Supplemental Brief on February 13, 2019. [Doc. 89]. Plaintiffs argue that, based on Floyd's testimony, Defendant should have retained 1,180 pounds of fines for testing, and that its failure to do so constituted spoliation of evidence. *Id.* at 5–10. Plaintiffs contend that Dr. Hall, Defendant's expert, testified that testing the fines would have produced relevant evidence. *Id.* Defendant filed its Response to Plaintiffs' First Supplemental Brief on February 21, 2019. [Doc. 90].

Plaintiffs filed a Second Supplemental Brief on March 13, 2019. [Doc. 92]. They again argue that the deposition testimony of Dr. Hall indicates that testing the fines would have produced

4

relevant evidence.[4] [Doc. 92] at 4–10. They make no new arguments in the Second Supplemental Brief; it largely provides quotations from Dr. Hall to support the same spoliation arguments made in the First Supplemental Brief. *See id.* Defendant responded to the Second Supplemental Brief on March 14, 2019. [Doc. 94].

## II. ANALYSIS

Plaintiffs argue that Madrazo's and Floyd's testimony establishes that Defendant has relevant evidence it has not disclosed. [Doc. 68]; [Doc. 89]. They argue that Defendant should be sanctioned under Federal Rule of Civil Procedure 37 for two reasons. First, they believe that Defendant's failure to disclose this evidence violated the Court's Order Granting in Part Plaintiffs' Motion to Compel [Doc. 53]. [Doc. 68] at 12–13. Second, they claim that Defendant's failure to disclose this evidence amounted to a failure to supplement under Rules 26(a) and 26(e). *Id.* at 13–14. The evidence that Defendant allegedly failed to disclose includes:

- Floyd's notes and records regarding Plaintiffs' feed;
- A fax concerning Defendant's formulation of and investigation into Plaintiffs' feed;
- Information about the storage of Plaintiffs' feed;
- Records identifying the feed formulation of other feeds that may have contaminated Plaintiffs' feed; and
- Evidence informally requested at Madrazo's deposition and in the October 30, 2018 email.

Plaintiffs also argue that Defendant spoliated evidence by destroying the fines. [Doc. 89] at 5–10.

---

[4] Dr. Hall was deposed on February 12, 2019—the day before Plaintiffs' deadline to file their supplemental brief—and the parties did not receive the transcript until February 28, 2019. *Id.* at 2; [Doc. 94] at 3.

Defendant argues that its supplemental responses complied with the Court's Order and Plaintiffs' informal discovery requests, and that spoliation sanctions are not warranted. [Doc. 72] at 1–5; [Doc. 90] at 2–7.

1.     **Formally Requested Discovery**

Plaintiffs argue that Defendant violated the Court's August 13, 2018 Order Granting in Part Plaintiffs' Motion to Compel by failing to properly supplement responses to RFPs #2–4. [Doc. 68] at 5–8. The Order, however, only granted the Motion to Compel insofar as the parties informally *agreed* to supplement discovery. [Doc. 53]. Plaintiffs do not present any evidence of what this agreement entailed. Without knowing exactly how Defendant agreed to supplement, the Court cannot determine whether it violated the Order. The Court therefore cannot sanction Defendant for violations of the Order as it related to RFPs #2–4. Even if the Court could sanction Defendant, however, it would decline to do so for the following reasons.

A.     **Request for Production #2**

RFP #2 requested "Defendants' records with respect to the development of Plaintiffs' custom formulation; i.e., the feed at issue in this case." [Doc. 72-4] at 1. Defendant provided some documents in response. *Id.* at 2. After the Court granted in part Plaintiffs' Motion to Compel, Defendant supplemented its original discovery response by stating, "AC Nutrition has made reasonable inquiry and there are no additional documents." *Id.* Plaintiffs argue that this response is inadequate because Madrazo testified that he "believe[s]" records of conversations and customer orders made by Floyd "should still be [at the mill] today." [Doc. 68-2] at 13. Thus, Plaintiffs reason, if defense counsel had made a reasonable inquiry, he would have found additional notes and records created by Floyd.

6

The Court declines to award sanctions here because Plaintiffs fail to establish that additional records actually exist. Madrazo merely testified that he *believes* or "*presume[s]*" that Floyd took notes regarding Plaintiffs' feed, and, assuming he did so, such notes should still be on file. [Doc. 68-2] at 13 (emphasis added). But he never testified that he actually saw the notes or that he knew with certainty they existed. Floyd, on the other hand, expressly testified that the notes already produced by Defendant were the only ones he made concerning Plaintiffs' feed. [Doc. 90-1] at 2.

At oral argument, Plaintiffs argued that a Rule 30(b)(6) designee's testimony binds the party, meaning that if Madrazo testified that Floyd took notes, those notes must have existed at some point, and Defendant should be sanctioned for not producing them. But the testimony of a Rule 30(b)(6) witness binds the organization just as the testimony of a witness binds that witness, no more, no less. It does not have conclusive effect. The testimony of a Rule 30(b)(6) representative merely acts as an evidentiary admission, which may be controverted or explained by a party. It is not a judicial admission, which is conclusive and cannot be withdrawn without leave of court. *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1261 (10th Cir. 2016). Defendant is free to call Floyd as a witness at trial to, in effect, impeach Madrazo. *See* Fed. R. Evid. 607 (permitting a party to impeach its own witnesses at trial). Defendant will bear the consequences, if any, for any inconsistencies between the testimony of its witnesses.

The Court cannot sanction a party for failure to produce documents that might or might not exist. The Court denies the Motion with respect to Defendant's alleged failure to produce additional notes from Floyd.[5]

### B. Request for Production #3

RFP #3 requested production of "records of the manufacture, movement in and around the mill, storage, shipping, and delivery of the subject feed . . . including what equipment and/or containers it was exposed to and when." [Doc. 72-4] at 2. Defendant produced approximately 70 pages of documents in response, then supplemented its response with 19 additional pages of documents. Defendant maintains that it has produced all responsive documents in its possession. [Doc. 72] at 2–3. Nevertheless, Plaintiffs ask the Court to sanction Defendant because the supplemental documents do not contain the information Plaintiffs are interested in seeing. [Doc. 68] at 7. The Court cannot sanction a party on that basis, however. An RFP does not request *information*; it requests *documents*. Defendant maintains that it has produced all responsive documents in its possession or control. [Doc. 72] at 2–3. The Court cannot sanction Defendant simply because the documents it provided do not contain the information Plaintiffs wish to see. Additionally, because Plaintiffs never objected to this supplemental response prior to the September 7, 2018 deadline, the Court rejects this argument as untimely. *See* [Doc. 53].

### C. Request for Production #4

RFP #4 asked Defendant to produce its "records identifying the formulation . . . of each of the five feeds, ingredients, or other substances in each of the containers/equipment identified in

---

[5] Plaintiffs also argued that Defendant, in response to RFP #2, gave them an incomplete fax, missing four pages, regarding the formulation of and investigation into the feed. [Doc. 68] at 4 & n.2. At oral argument, however, Plaintiffs agreed that the issue is now moot because they have all 19 pages of the fax. *See* [Doc. 68-2] at 46–48, 76–91. The Court therefore denies as moot sanctions related to the production of the fax.

response to [RFP] #3, above, prior to the feed at issue being in that container/equipment."
[Doc. 72-2] at 2. Defendant supplemented its response by providing documents 004403–004422.
[Doc. 68] at 8. Plaintiffs argue that the supplemental documents do not properly respond to this
RFP because "[t]hey are entirely void of any information with respect to the places where the
subject feed was." *Id.* Again, Defendant maintains that it has produced all responsive documents.
[Doc. 72] at 2–3. As with RFP #3, the Court cannot sanction Defendant merely because the
documents responsive to the request do not contain the information Plaintiffs hoped they might.
Moreover, Plaintiffs failed to object to Defendant's supplemental response by the September 7,
2018 deadline. The Court therefore declines to sanction Defendant for alleged discovery abuses
related to RFP #4.

**2.      Other Requested Items and Spoliation**

Plaintiffs argue that Defendant failed to produce evidence informally requested, either at
Madrazo's deposition or in the October 30, 2018 email, including the fines created during
manufacture of Plaintiffs' feed. [Doc. 68] at 4–5. Because Plaintiffs never requested these items
in formal, written discovery, the Court will not sanction Defendant for its alleged failure to provide
them. *Cf. Bautista v. MVT Servs., LLC*, Civil Action No. 16-cv-01086-NYW, 2017 WL 2082925,
at *5 (D. Colo. Mar. 20, 2017) ("Rules 33 and 34 contemplate civil litigants' use of *written*
interrogatories and requests for production . . . ." (emphasis added)).[6]

---

[6] Plaintiffs request sanctions for Defendant's alleged failure to produce an inventory of Defendant's monensin use.
[Doc. 68] at 5. At oral argument, the Court asked Plaintiffs' counsel which RFP requested these records, and
Plaintiffs' counsel replied that they were "formally" requested during Madrazo's deposition. Obviously, requesting
records during a deposition is not a proper RFP. Neither is emailing opposing counsel asking if they would look into
whether records existed. Therefore, Plaintiffs never requested the inventory through formal, written discovery, and
the Court declines to sanction Defendant for its alleged failure to produce it.
   Even assuming that Plaintiffs did properly request the inventory—such as under RFP #3—the Court declines
to impose sanctions. It is unclear how this inventory implicates the Court's August 13, 2018 Order. Plaintiffs' Motion
to Compel did not concern any monensin inventory. *See* [Doc. 44]. The Court did not mention it when granting the

Nonetheless, Plaintiffs argue that the Court should sanction Defendant because it spoliated evidence by destroying the fines created during manufacture of the Plaintiffs' feed. [Doc. 89] at 3. Assuming *arguendo* that Plaintiffs formally requested the fines, the Court would nevertheless decline to sanction Defendant. "The party seeking [spoliation] sanctions must prove, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it." *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, No. 15-cv-0850 KRS/GBW, 2019 WL 652849, at *3 (D.N.M. Feb. 15, 2019).[7] "A spoliation sanction is proper where: (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015).

Plaintiffs' spoliation claim fails because they have not proven that Defendant failed to preserve evidence after it knew that litigation was imminent. Plaintiffs present no argument, much less evidence, of *when* the fines were destroyed. Defendant delivered the feed to Plaintiffs on or around December 8, 2016. [Doc. 1-1] at 5. Plaintiff Ronny Derrick called Floyd on December 21, 2016, and told Floyd that there was the possibility of "liability and a legal settlement" due to the

---

Motion in part. *See* [Doc. 52]; Recording of Hearing on Plaintiff's Motion to Compel (August 13, 2018) (Liberty—Picacho Courtroom). As noted above, in order for the Court to grant sanctions for violating the Court's Order mandating that Defendant supplement its discovery responses, Plaintiffs must produce evidence of *how* Defendant agreed to supplement. They have not done so, and there is otherwise no indication that this agreement included production of monensin inventory. Though Plaintiffs also request sanctions for Defendant's failure to supplement discovery under Rules 26(a) and 26(e), [Doc. 68] at 13, they do not explain how Madrazo's testimony triggered Defendant's duty to supplement its previous answer to an RFP with the monensin inventory. The Court therefore declines to sanction Defendant for its failure to produce an inventory of its monensin use.

[7] Plaintiffs do not state whether they request spoliation sanctions under Rule 37 or the Court's inherent authority. *See* [Doc. 89]. As Plaintiffs never requested the fines through formal discovery, and the Court never ordered their production, Rule 37 is inapplicable. The Court therefore construes Plaintiffs' spoliation arguments as a request for sanctions under the Court's inherent authority. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266–67 (8th Cir. 1993); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991); *see also Taydus v. Cisneros*, 902 F. Supp. 288, 295 (D. Mass. 1995).

deaths of the horses. [Doc. 89-1] at 11. Assuming that call should have caused Defendant to reasonably anticipate litigation, it is unclear whether at that point Defendant had already destroyed the fines. Floyd testified that Defendant reuses (effectively destroying) non-medicated fines[8] like the fines here "into another formulation fairly quickly," within "weeks . . . [or] days" after their creation. [Doc. 90-1] at 8. There is no evidence of record upon which the Court could base a finding that Defendant reused the fines after the telephone call between Floyd and Ronny Derrick.

### 3.     Defense Counsel's Requests for Attorneys' Fees and Costs

Defendant requests its attorneys' fees and costs incurred in responding to the Motion for Sanctions because Plaintiffs filed the Motion in bad faith. [Doc. 72] at 3–4. It also requests its fees and costs in responding to the Second Supplemental Brief because (1) the Court never authorized Plaintiffs to file supplemental briefing about any discovery besides the depositions of Floyd and Dr. Box, and (2) Plaintiffs filed the Second Supplemental Brief after the February 13, 2019 supplemental-briefing deadline. [Doc. 94] at 6–7.

The Court denies defense counsel's first request for attorneys' fees because, though the Court will deny Plaintiffs' Motion for Sanctions, the Court does not find that Plaintiffs filed it in bad faith. The Court rejects defense counsel's second request for attorneys' fees for two reasons. First, at the February 1, 2019 Status Conference, the Court did not limit supplemental briefing solely to issues related to Floyd's and Dr. Box's depositions. *See* [Doc. 86] at 1; Recording of Status Conference, at 4:15–6:00. Second, though Plaintiffs filed the Second Supplemental Brief after the February 13, 2019 supplemental briefing deadline, it contained no new theory or

---

[8] Feed or fines that are supposed to contain monensin are considered medicated and are supposed to be marked accordingly. [Doc. 90-1] at 7. It is undisputed that the fines here were not intended to be medicated because Plaintiffs' guaranteed analysis did not include monensin. *See id.* at 7–8; [Doc. 90] at 6; *see also* [Doc. 73-1] (the label for Plaintiffs' feed).

argument. It merely contained excerpts from Dr. Hall's deposition transcript, which was not available when the First Supplemental Brief was filed. *See* [Doc. 92]. Though Plaintiffs filed the Second Supplemental Brief mere days before oral argument, it contained nothing that should have come as a surprise to defense counsel.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiffs' Motion for Sanctions [Doc. 68] is **DENIED**. Defendant's request for attorneys' fees, [Docs. 72, 94], is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**